**Lloyd V. KIRBY, Edna Kirby, Geneva Daugherty and Roy Lewis, Individually and as representatives of the Class Described as "The Trustees of the First Bible Missionary Church and Their Successors in Office", Appellants (Defendants Below),**

v.

**SECOND BIBLE MISSIONARY CHURCH, INC., an Indiana Not–For–Profit Corporation, Appellee (Plaintiff Below).**

**No. 2–1078A346.**

Court of Appeals of Indiana, Second District.

Dec. 15, 1980.

Samuel A. Fuller, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Robert S. Koor, Muncie, for appellants.

Raymond A. Brassart, Lennington, Lennington & Brassart, Muncie, for appellee.

SULLIVAN, Judge.

Defendants Lloyd Kirby, Edna Kirby and Roy Lewis[1], individually and as representatives of the class denominated "Trustees of the First Bible Missionary Church and their successors in office" [Trustees of First Church] appeal from a trial court quiet title judgment declaring the Plaintiff, Second Bible Missionary Church, Inc. [Second Church], to be the owner in fee simple of certain real estate; namely, lot 16 in the Muncie Natural Gas Land Improvement Company's Subdivision of Galliher and Ohmer Tract. Because we reverse the judgment of the trial court, we need only address the assertion by Trustees of First Church that Second Church was collaterally estopped from attacking the validity of a quitclaim deed executed by the trustees of Second Church in 1959.

The facts are as follows. Before the matters in controversy here arose, Second Church owned lot 16 in the Muncie Subdivision of the Galliher and Ohmer Tract [lot 16] and lots 53 and 54 in Aultshire [lots 53 and 54]. On April 19, 1958, the Christian Church Conference, Inc. [Christian Church], then operating under another name, contracted to buy lots 53 and 54 from Second Church. That contract does not appear of record in this cause. On January 30, 1959, before that contract was paid off, the trustees of Second Church conveyed lots 16, 53 and 54 to the trustees of the First Church by the quitclaim deed heretofore mentioned.

Second Church filed an amended complaint in the case at bar on January 30, 1969. Thereafter, on May 20, 1971, Christian Church brought a quiet title action (Cause No. 71/494) in Delaware Circuit Court against the Second and First Churches as well as several other named defendants regarding lots 53 and 54. On June 25, 1974, while the quiet title action was pending, Christian Church paid the trustees of First Church one thousand dollars [$1,000.00] in exchange for a warranty deed for lots 53 and 54 and an indemnification agreement. On July 2, 1974, nearly four years prior to the judgment now under consideration, the Delaware Circuit Court decreed quiet title in Christian Church as to those lots. In its decree the court noted that Second Church had failed to appear and was therefore defaulted and that the defendants Edna Kirby, Daugherty, Lewis, and Lloyd Kirby, individually and as representatives of the class described as "The Trustees of First Bible Missionary, Inc., and Their Successors in Office" consented to

---

1. Geneva Daugherty was also a party defendant, but is now deceased.

entry of judgment. The court recited the complex sequence of events including the quitclaim deed from Second Church to First Church and the subsequent warranty deed from First Church to Christian Church and stated in part:

"That each and all of the allegations of plaintiff's complaint are true and plaintiff is entitled to the relief therein prayed for.

. . . . .

... [F]or a period of several years, plaintiff was unable to ascertain the party to whom the final payment of One Thousand ($1,000.00) Dollars should be made and from whom a deed to the real estate should be secured [because of the present dispute between Second Church and Trustees of First Church]; that, subsequently, on the __25th__ day of __June__, 1974, plaintiff did pay and deliver to the defendants, Edna Kirby, Geneva Daugherty, Roy Lewis, and Loyd [sic] V. Kirby, individually, and as representatives of the class described as "The Trustees of First Bible Missionary Church, Inc. and Their Successors in Office", the said sum of One Thousand ($1,000.00) Dollars, and did receive from said defendants a Warranty Deed to said real estate and an indemnity agreement, indemnifying plaintiff against any and all adverse claims to said real estate by any of the other named defendants in this cause; that, by virtue of the facts alleged, ... plaintiff herein should be deemed the equitable and legal owner of said real estate . . . ."

Trustees of First Church in the case at bar sought to introduce the prior judgment at trial. They reason that in quieting title in Christian Church, the Delaware Circuit Court necessarily found that the warranty deed from First Church to Christian Church was valid and therefore implicitly found that the earlier quitclaim deed conveying lots 16, 53 and 54 from Second Church to First Church was valid. Thus, they urge, the Delaware Superior Court erred in allowing Second Church to relitigate the validity of that quitclaim deed.

Second Church responds that while there may be collateral estoppel as to the validity of that deed as to lots 53 and 54, lot 16 was never at issue in the Christian Church action and therefore the doctrine of collateral estoppel is inapplicable to lot 16. In addition, Second Church suggests that Trustees of First Church's consent to judgment in the earlier case may have been collusive so that they may not now invoke collateral estoppel to their advantage. Finally, Second Church urges that the issue of the validity of the quitclaim deed was never truly determined in the previous action.

I.

Indiana has long recognized res judicata to be a bifurcated doctrine. As stated in *In re Estate of Nye* (2d Dist.1973) 157 Ind. App. 236, 249 n. 9, 299 N.E.2d 854, 862 n. 9 (emphasis supplied):

" 'Within the doctrine of res judicata, it is of vital importance to observe the distinction between the effect of a judgment upon the cause of action on which the judgment is based and its effect upon a subsequent controversy between the parties based upon a different cause of action. A judgment has the effect of putting an end to the cause of action which was the basis of the proceeding in which the judgment is given . . . .

Very different is the effect of a judgment upon a subsequent controversy between the parties based upon a different cause of action but involving the same or some of the same questions which were involved in the original action. Here the judgment is conclusive between the parties only as to matters actually litigated and determined in the prior action; it is not conclusive as to matters which might have been but were not actually litigated and determined. The cause of action involved in the second proceeding is not extinguished by the judgment in the prior proceeding by way of bar or merger. But matters *actually litigated and determine[d]* in the prior action cannot be

relitigated in the later action. As to such matters, we have said there is a *collateral estoppel.* The estoppel does not rise from representations made by one of the parties upon which the other party has relied, as in the case of the ordinary estoppel *in pais.* But a party who has once fought out a question in litigation with the other party is precluded from fighting it out again. The term 'collateral' estoppel is intended to emphasize the fact that the causes of action involved in the two proceedings are different, even though the issues or some of them are the same.' Scott, Collateral Estoppel by Judgment, 56 Harv.L.R. 1, 2 (1942).

A similar statement of the distinction between the two branches of the doctrine of *res judicata* is to be found in *Town of Flora v. Indiana Service Corporation* (1944), 222 Ind. 253, 256, 53 N.E.2d 161, 163, in which the first branch is called 'estoppel by judgment' and the second 'estoppel by verdict or finding.' "

In the case at bar, the appellants concede that the actions are not identical so estoppel by judgment is inapplicable. However, they urge that estoppel by verdict or finding precludes any relitigation of the validity of the quitclaim deed.

In addition to the "actually litigated" requirement, our courts have long recognized two additional prerequisites to the application of issue preclusion: 1) identity or privity of parties; and 2) mutuality of estoppel. *E. g., Tobin v. McClellan* (1947) 225 Ind. 335, 344, 73 N.E.2d 679, 683. The pivotal question for the purposes of this appeal is whether the issue (validity of the quitclaim deed) was "actually litigated" in Cause No. 71/494.[2] That is to say, in adjudicating Christian Church to be the legal and equitable owner of lots 53 and 54, did the trial court necessarily determine that the quitclaim deed conveying lots 53, 54 and 16 from Second Church to First Church was

valid? *Mayhew v. Deister* (1969) 144 Ind. App. 111, 121, 244 N.E.2d 448, 453.

■ The applicable case law leaves no doubt that the validity of the quitclaim deed in question was necessarily determined in the first action. In *Faught v. Faught* (1884) 98 Ind. 470, the plaintiff sought to set aside a will on the grounds that the testator was of unsound mind. In a prior judgment, the testator's wife had brought suit for construction of the will in which plaintiff was a named defendant. The court found that the validity of the will was the central issue in the construction action and therefore plaintiff was estopped from now maintaining his action to set aside that will. The court discussed the purpose and effect of lawsuits concerning deciphering legal instruments such as wills and deeds.

"Whether a claimant's title is founded on a will or on a deed, he has a right to have it quieted, and in asserting a will as the foundation of his title he puts its validity in issue and invites his adversaries to meet him upon it. The chief object of a suit to quiet title is to make it firm in the claimant, and to have his muniments of title declared valid and effective. Little good would be accomplished be a decree in such a case, if the defendants were at liberty to destroy the only source of title by overthrowing the will which created it. Our statutory action to quiet title is a combination and an extension of the equity proceedings known as bills of peace and suits to quiet title. It is a very broad and comprehensive action, as has been time and again adjudged, and it calls upon the defendants to contest with the complainant all the questions affecting the title asserted. The purpose of a decree quieting title is to put an end to all questions concerning it, no matter what shape they may assume. (Citations omitted).

2. Identity or privity of parties and mutuality of estoppel have not been argued on appeal. We note that even if they had been properly raised and argued, the facts of this case clearly present no identity of parties or mutuality of

estoppel problems. *See Tobin v. McClellan, supra; Indiana State Highway Commission v. Speidel* (2d Dist.1979) Ind.App., 392 N.E.2d 1172, *transfer pending; Meyhew v. Deister* (1969) 144 Ind.App. 111, 244 N.E.2d 448.

In order to quiet title it is necessary to determine that there is title, and *where title is asserted to rest on a deed or will, the validity of the instrument is of necessity in issue.* If there is no life in the instrument which is asserted to create title, then there is no title at all, and if this be true, and we can not perceive how it can be reasonably questioned, then one of the very first and most material questions for decision is, has the instrument any force?" *Id.* at 475–76 (emphasis supplied); *see Groves v. Burton* (1954) 125 Ind.App. 302, 312, 123 N.E.2d 204, 208.

In Cause No. 71/494 in the Circuit Court, when the court there adjudged Christian Church to be the equitable and legal owner of lots 53 and 54, it determined that Christian Church was the rightful owner as against all others claiming an interest. Necessarily, by that judgment Second Church was divested of any and all interest in those lots. Since the pleadings showed that Christian Church paid $1,000 to *First Church* in exchange for a warranty deed, it follows that the court must have found that at some point *Second Church* disposed of its interest. The only conceivable way in which Second Church, on the basis of the facts alleged, could have ceded title was through its quitclaim deed to First Church. In that quitclaim deed all three lots (16, 53 and 54) were involved. Thus, the inescapable conclusion is that the validity of that quitclaim deed was a necessary predicate to the trial court's determination to quiet title in Christian Church; Second Church is estopped to relitigate that issue.

 Second Church notes that even if collateral estoppel could apply, it should not be invoked where there is fraud or collusion. Second Church then suggests that the fact that the trustees of First Church entered an appearance by two attorneys in Cause No. 71/494 and then consented to judgment is indicative of collusion or fraud. Fraud is never presumed; it must be proved by the party making the charge.

*See generally Baker v. Miller* (1956) 236 Ind. 20, 138 N.E.2d 145; *State Farm Mutual Automobile Insurance Co. v. Shuman* (1st Dist.1977) Ind.App., 370 N.E.2d 941. While Appellees imply that fraud or collusion existed, we do not find their averments to be clear, specific and definite enough to present an issue. It will be presumed that a judgment, by consent or otherwise, is valid and subsisting in the absence of proof to the contrary. In addition, it is not the consent of First Church which binds Second Church to the judgment in Cause No. 71/494. Rather, it is Second Church's own default in that action which made the judgment conclusive as to it.[3]

### II.

Because of our disposition of issue one, it is unnecessary for us to discuss whether the trial court erred in considering evidence, other than the deed itself, which raises possible first amendment implications. For the reasons elucidated above, Second Church was precluded from relitigating the validity of the deed and accordingly no such issue was properly before the trial court. Similarly, the trustees of First Church urge that the trial court erred in allowing Second Church to amend its complaint ten years after filing the original complaint. Any alleged error in that amendment is rendered superfluous by our determination that Second Church was estopped to litigate the validity of the quitclaim deed.

The cause is reversed and remanded with instructions to enter judgment consistent herewith.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**3.** Second Church does not argue that it may not be estopped by a default judgment. However, such a contention even if properly raised

would be ineffectual. *See Grantham Realty Corp. v. Bowers* (1939) 215 Ind. 672, 22 N.E.2d 832.