FOURSQUARE TABERNACLE
CHURCH OF GOD IN
CHRIST, Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T05–8904–TA–00009.

Tax Court of Indiana.

Feb. 20, 1990.

Karl W. Kindig, B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by James R. Green, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Foursquare Tabernacle Church of God in Christ (the Church) brings its original tax appeal from a final determination of the State Board of Tax Commissioners. The Church has moved for summary judgment.

## FACTS

For each of the years, 1982 through and including 1987, the Church filed applications for exemptions with respect to parcels of real estate and certain improvements thereon, owned by the Church in Marion County. The Church purchased this property, parcel by parcel, over a period of years. The Church has maintained that it will continue to purchase additional parcels of property until it can, one day, build a world class tabernacle on the property.

To this date, the parcels of property have not been used for any purpose by the Church and the property has not produced any income. Individuals living in houses on the property were allowed to remain until they could find alternative housing. The Church has since boarded up the houses and has left them standing unused.

The Church claimed exemptions for the property pursuant to IC 6–1.1–10–16(d). The Board denied the exemptions because the Church failed to prove that the property was purchased for the purposes of IC 6–1.1–10–16(d).

The Church has had a congregation of approximately thirty-five active members since 1982. The Church has brought in approximately $10,000 per year in income, which has been just enough to meet its expenses. The Church has not designated any savings fund for the intended construction of the world class tabernacle, which is expected to cost up to $5,000,000. The minister of the Church believes that the Church will one day be able to afford such a major project.

In order to build the proposed facility, the Church must acquire additional properties not yet owned by the Church. These properties are necessary to accommodate the proposed project, yet they may never be available. There is no proper zoning in effect and no steps have been taken to obtain proper zoning. The only steps taken by the Church to plan the construction of the proposed project occurred in 1984, when the Church contacted Myler Church Building Systems, which merely sent some standard information to the Church. The Church has not made any further contact with this company or any other company regarding construction of the tabernacle. Additional facts will be provided as necessary.

## ISSUES

This case presents three issues:

I. Whether claim preclusion (res judicata) applies to the case at bar.

II. Whether issue preclusion (collateral estoppel) applies to the case at bar.

III. Whether the Church qualifies for an exemption under IC 6–1.1–10–16(d).

## DISCUSSION AND DECISION

The first and second issues, aforementioned, arise from a judgment by default which was rendered against the Board and in favor of the Church by the Marion Superior Court on September 27, 1984. This prior case (Cause No. S283–1630) involved the same parcels of real estate for 1982, the same issues, and the same facts as the case at bar. No appeal was taken. The Church contends that the Board is barred and precluded by principles of res judicata and collateral estoppel from denying the exemptions.

### I.

The Church asserts that the elements of claim preclusion are present in the case at bar. There are four elements of claim preclusion (res judicata):

(1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former suit; (3) the particular controversy adjudicated in the former action must have been between the parties to the

present suit; and (4) judgment in the former suit must have been rendered on the merits. *State Exchange Bank of Culver v. Teague* (1986), Ind.App., 495 N.E.2d 262, 266.

■ A default judgment is a judgment on the merits for purposes of res judicata. *Patterson v. State* (1859), 12 Ind. 86. Therefore, the Church concludes that the parcels described in Cause No. S283–1630, are exempt.

■ The Board contends that res judicata does not apply to the case at bar because the prior judgment of the Marion Superior Court merely remanded the case to the Board for reassessment. The superior court crossed out the language that was originally typed on the judgment which granted exemptions to the Church and inserted language which remanded the case to the Board. Since IC 6–1.1–15–8 provides that the court's authority is limited to remanding the case to the Board for a new assessment, the Board concludes that the court's judgment has no binding effect.

The court is disturbed by the Board's contentions. The Board maintains that once the court issues a judgment in a case and remands the case to the Board, the Board can reassess the property in direct contravention of the court's order. Moreover, the Board suggests that once the Board reassesses the property in question, the court's previous judgment has no binding effect over the new assessment. If the court were to accept such unfounded reasoning, the court's role of judicial review would be a nullity.

■ The purpose of judicial review of the Board's final determinations is to examine the Board's findings and determine if they are unsupported by substantial evidence, contrary to law, or arbitrary and capricious. *Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind. Tax, 512 N.E.2d 911. In such case, the court has the authority to vacate and set aside the Board's final determination. However, the court cannot carry out the administrative function of assessing property. Therefore, the court must remand the case to the Board for reassessment.

Such reassessment is to be done in compliance with the court's order. IC 6–1.1–15–8.

A judgment by default rendered against the Board must be given binding effect. Otherwise, there would be no reason for the Board to enter an appearance in a case. All the Board would have to do is fail to answer the taxpayer's appeal and then disregard the resulting default judgment. The taxpayer would be continuously denied his day in court and the Board would effectively avoid all means of judicial review.

Therefore, the court finds against the Board for the tax year 1982, and the Board is bound by the Marion Superior Court default judgment issued on September 27, 1984.

## II.

■ The Church contends that the Board is collaterally estopped from litigating the tax years 1983 through and including 1987, because the issues for each of these years are the same as the issues for the 1982 year determined by the default judgment.

The Board asserts that it is authorized by law to annually review all property for which property owners claim an exemption. IC 6–1.1–11–7 to –8. Therefore, even if the default judgment of the Marion Superior Court is given res judicata effect for the 1982 tax year, the Board is not precluded from determining the tax-exempt status of the property for subsequent years.

The issues and parties involved in the case at bar are the same issues and parties involved in the case decided by the default judgment. The change in the years did not change the issues. Therefore, the question becomes whether the Board is precluded by the default judgment from asserting the same issues in this tax appeal for subsequent years when there has been no change in the facts.

This court decided in *Porter's South Shore Cleaners, Inc. v. State* (1987), Ind. Tax, 512 N.E.2d 895, that "fairness dictates that if the judgment is by default then the issue is not precluded in a subsequent suit." *Id.* at 898. The Church asserts that the court's ruling in *Porter's South Shore*

is contrary to the holdings of the Indiana Supreme Court and Court of Appeals. The Church cites to *Grantham Realty Corporation v. Bowers* (1939), 215 Ind. 672, 22 N.E.2d 832, and *Kirby v. Second Bible Missionary Church* (1980), Ind.App., 413 N.E.2d 330.

In *Grantham,* the trial court heard evidence and entered a default judgment on behalf of the plaintiff in a quiet title action. Certain defendants, who were included in the action to quiet title as unknown heirs of a defendant and who were constructively notified by published notice, questioned whether they were precluded from subsequently challenging the trial court's judgment. The Indiana Supreme Court held that the defendants had been duly served with notice as required by law and were thus bound by any matters necessarily found by the judgment. 22 N.E.2d at 836.

In *Kirby,* the court extensively discussed the treatment of issue preclusion under Indiana law. The court explained that judgments are preclusive as to matters which are "actually litigated." The court held that the validity of the quitclaim deed was necessarily determined in the original action to quiet title:

> Our statutory action to quiet title is a combination and an extension of the equity proceedings known as bills of peace and suits to quiet title. It is a very broad and comprehensive action.... The purpose of a decree quieting title is to put an end to all questions concerning it, no matter what shape they may assume. *Id.* at 333 (quoting *Faught v. Faught* (1884), 98 Ind. 470).

Both *Grantham* and *Kirby* involved quiet title actions in which the defendants attempted to raise additional questions concerning the rightful owners of the subject properties. Since the default judgment in each case determined that the respective plaintiffs were the rightful owners against all others claiming an interest, it necessarily follows that the defendants were divested of any and all interest in the properties. As the issue of rightful ownership was "actually litigated," the defendants were precluded from raising any issues regarding rightful ownership in a subsequent suit.

In original tax appeals, each assessment and each tax year stands alone. Thus, it does not necessarily follow from the default judgment entered against the Board for the 1982 tax year that the particular issues raised by the subsequent assessments were actually litigated. The court finds that the Board is not collaterally estopped by the default judgment for tax years 1983 through and including 1987.

### III.

The final issue to be determined involves the exemption provided by IC 6–1.1–10–16(d). During the years in issue, that statute proclaimed, in pertinent part:

> (d) A tract of land is exempt from property taxation if:
>
> > (1) it is purchased for the purpose of erecting a building which is to be owned, occupied, and used in such a manner that the building will be exempt under subsection (a) or (b) of this section; and
> >
> > (2) the tract does not exceed forty (40) acres.

The Church contends that as IC 6–1.1–10–16(d) does not state a specific test to show that the property is acquired for an exempt purpose, the Church need only state its intention without any other evidence or proof. The Church maintains that it is entitled to judgment on this issue, as a matter of law. The court does not agree.

The rules governing summary judgment are well-settled. There must be no genuine issue of material fact and the moving party must be entitled to judgment as a matter of law. *Young v. City of Franklin* (1986), Ind., 494 N.E.2d 316, 317. The burden is on the moving party to show that no genuine issue of material fact exists. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 313, 411 N.E.2d 614, 615.

Although IC 6–1.1–10–16(d) does not explicitly state any guidelines which would require the proposed project to be constructed, or at least under construction,

in a certain amount of time, the taxpayer has the burden of proof to show that the property is within the scope of the exemption. Moreover, statutes granting exemption are to be strictly construed in favor of the state and against the taxpayer.

It is well established that statutes exempting property from taxation are to be strictly construed in favor of the tax, and the burden is upon the one claiming exemption to show that the property clearly falls within the exemption statute. *LeSea Broadcasting Corp. v. State Bd. of Tax Comm'rs* (1988), Ind. Tax, 525 N.E.2d 637, 638 (quoting *Indiana Ass'n of Seventh–Day Adventists v. State Board of Tax Comm'rs* (1987), Ind. Tax, 512 N.E.2d 936, 938).

■ Generally, exemptions are granted when there is an expectation of a benefit which will inure to the public by reason of the exemption. "The rationale justifying a tax exemption is that there is a present benefit to the general public from the operation of the charitable institution sufficient to justify the loss of tax revenue." *White Cross Hospital Ass'n v. Board of Tax Appeals* (1974), 38 Ohio St.2d 199, 311 N.E.2d 862, 863.

■ It would not serve any purpose to grant an exemption for property merely owned by a church, with no reasonable expectation of the property ever being used for its intended purpose. The public does not derive any benefit from property which is not being used or taxed.

The Ohio courts have recognized that the basis for a tax exemption is the public benefit and that vacant land purchased by a religious institution for the purpose of erecting a church, sometime in the future, may be exempt from taxation under RC 5709.07.[1] However, mere ownership standing alone is not enough to create a right to tax exemption. Also, the intent to use the property for an exempt purpose must be more than a mere dream. *Peoples Faith Chapel, Inc. v. Limbach* (1985), 18 Ohio St.3d 236, 480 N.E.2d 781; *Welch Ave.*

*Freewill Baptist Church v. Kinney* (1983), 10 Ohio App.3d 196, 461 N.E.2d 19; *Holy Trinity Protestant Episcopal Church v. Bowers* (1961), 172 Ohio St. 103, 173 N.E.2d 682. As stated in *Holy Trinity*,

The intent to use such property for an exempt purpose must be one of substance and not a mere dream that sometime in the future, if funds can be obtained, the entity would so use such property. In other words, it must be shown that the entity, at the time the application for exemption is made, is actively working toward the actual use for the public benefit. Evidence that surveys have been made and plans drawn or that active fund-raising campaigns are being carried on is indicative that the exempting use will be made of the property within a reasonable time. 173 N.E.2d at 685.

Although the Ohio statute, RC 5709.07, differs from IC 6–1.1–10–16(d), the rationale from the Ohio cases is applicable to this case. Subsection (a), of IC 6–1.1–10–16, is directly referred to in IC 6–1.1–10–16(d). Under Subsection (a), a building will be exempt if it is "owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes." Similarly, under Subsection (d), a tract of land will be exempt if it is to be used for the construction of a building "which is to be owned, occupied, and used in such a manner that the building will be exempt under subsection (a) or (b)."

As each of these subsections of IC 6–1.1–10–16 require "ownership, occupancy and use," mere ownership of land by a church is not enough for exemption. The land must be used for the eventual construction of a building which will be occupied and used by its owner for exempt purposes. The burden falls upon the taxpayer to establish that this construction will occur.

While the court does not doubt the word of the Church's minister, there is nevertheless at this point, a lack of objective evidence to support the Church's entitlement

---

**1.** This Ohio statute provides, in part, "houses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof … shall be exempt from taxation."

to the exemption. There is a genuine issue of material fact as to whether the property in question will be used in the future for the purpose of the exemption.

Furthermore, for the property to be exempt under IC 6–1.1–10–16(d), it must be located within a "tract of land." The Board contends that the multiple lots of property owned by the Church do not constitute a "tract of land."

A "tract of land" has been defined as "a contiguous body of land under common ownership." *Indiana Ass'n of Seventh–Day Adventists v. State Bd. of Tax Comm'rs* (1988), Ind. Tax, 519 N.E.2d 772, 774. Also, a tract of land is contained within a continuous border. IC 6–1.1–1–22.5.

It appears that the lots of property owned by the Church are interspersed between lots owned by private landowners. Also, there are roadways which run between some of the lots. Moreover, most of the lots of property lie outside the area designated by the Church where it hopes to build the tabernacle.

However, the Church has indicated that it plans to use some of the lots for other buildings and parking facilities which will be necessary and integral to the functions of the tabernacle. Therefore, there is a possibility that some of the lots of property may form a tract of land acquired for the purpose of erecting a building, for the purposes of IC 6–1.1–10–16(d). Yet, the Church's plans, provided at this point, are too sparse to enable the court to conclude definitively whether any of these lots of property constitute tracts of land.

The court therefore finds that there is a genuine issue of material fact as to whether any of the lots of property constitute a "tract of land" which will be used for the purposes of IC 6–1.1–10–16(d).

The Church's motion for summary judgment on the issue of res judicata for tax year 1982, is GRANTED, and the matter is remanded to the Board for further action in accordance with this opinion.

The Church's motion for summary judgment on the issue of collateral estoppel and the issue of eligibility for exemption under IC 6–1.1–10–16(d), is DENIED.