GLASS WHOLESALERS,
INC., Petitioner,

v.

STATE OF INDIANA BOARD OF TAX
COMMISSIONERS, Respondent.

No. 45T05–8911–TA–00056.

Tax Court of Indiana.

March 28, 1991.

James J. Nagy, Munster, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Glass Wholesalers, Inc. (Glass) appeals the Indiana State Board of Tax Commissioners' (State Board) final determination denying an adjustment for abnormal obsolescence on inventory reported on Glass' 1988 business tangible personal property tax return.

## FACTS

In 1986, Glass Wholesalers was incorporated for the purpose of wholesaling automobile glass. Glass stocked its inventory chiefly with Chrysler product windshields it agreed to purchase from Lansing Auto Glass. The inventory obtained from Lansing Auto Glass was the only inventory Glass maintained. Customer orders that could not be filled from this inventory were filled by Glass after the customer ordered the windshield.

At the end of 1987, Glass indicated the inventory's value was $588,130.15[1] on its federal tax return and on its other books and records. On its 1988 amended federal income tax return, Glass reported the value of the same inventory was $242,032.60 at the end of 1988. Although Glass gave no reason at the time for the substantial drop in value, Glass' secretary and accountant testified at the trial that the inventory was obsolete; however, the books were not adjusted prior to the end of 1988 because that was the first time Glass' accountant became aware of the obsolescence.

On its state business tangible personal property tax returns, Glass valued its inventory in the following manner: for 1987, a cash value of $106,633 and an assessed value[2] of $35,544.33; for 1988, a cash value of $103,480 and an assessed value of $34,493.33; for 1989, a cash value of $125,709 and an assessed value of $41,903.

On April 6, 1989, under the authority granted by IC 6–1.1–14–10 and IC 6–1.1–14–11, the State Board notified Glass of a hearing to be held on April 27th, partly for the purpose of reviewing Glass' reported self-assessment of its inventory on the 1988 personal property tax return.[3] After the hearing on May 10, 1989, a hearing officer visited Glass' premises, visually inspected the inventory, and examined Glass' books and records, a depreciation schedule, the 1987 federal income tax return, the 1988 January and February sales and purchase receipts, financial statements consisting of balance sheets, the 1988 original federal

---

**1.** Glass did not receive all the inventory it agreed to purchase from Lansing Auto Glass in 1986, but received some of the inventory during 1987.

**2.** Although only the total assessed values are reported on Form 103, which is the sum of the value of Glass' tangible personal property other than inventory plus the value of Glass' inventory, the assessed value of Glass' inventory is calculated by dividing the reported cash value of the inventory by three.

**3.** At a later date in 1989, the State Board reviewed Glass' 1987 and 1989 business tangible personal property tax returns. In the case at bar, the 1987 and 1989 assessments are pertinent only as they relate to Glass' claim of estoppel.

income tax return,[4] and some inventory record cards. Glass' 1987 federal income tax return showed the ending inventory value of $588,130.15, as did the 1987 balance sheet and the beginning inventory value listed on the 1988 federal tax return. The amended federal return Glass filed for 1988 also indicated the value of beginning inventory for 1988 was $588,130.15.

On June 21, 1989, the hearing officer issued her recommendation for the 1988 assessment which increased Glass' total assessed value from $42,490 to $141,530. On June 27, 1989, Glass requested an administrative hearing which was held on September 13, 1989. On September 29, 1989, the State Board issued its written findings which provide in pertinent part:

The question at issue . . . is the Taxpayer's claim for an abnormal obsolescence adjustment . . . on a portion of its inventory. The issue has been partially addressed in *Don Medow.* . . .

. . . .

. . . [There are] only two criteria for establishing a claim for abnormal obsolescence on inventory:

1. Exceptional technological obsolescence, or
2. Destruction by catastrophe.

Neither of these criteria have been proven by the Taxpayer.

The Taxpayer claims that it had suffered 'unforeseen changes in market value' on a portion of its inventory and, therefore, had abnormal obsolescence on that same portion of its inventory. In *Don Medow,* the Court also addressed this issue.

'. . . (O)ther provisions of 50 IAC 4.1–3 allow for changes in market condition. 50 IAC 4.1–3–5 allows the taxpayer to elect to value inventory on the prior calendar year average. This provides relief from the burden of excess inventory on the assessment date. 50 IAC 4.1–3–6 provides for a method of valuing inventory at the lower of cost or market. There are requirements which must be met in using these methods which may cause a

taxpayer not to elect to use them. However, both of these options do allow for changes in market condition and the record suggests that these options were available to the taxpayer.'

The State Board would make it clear that the options mentioned above were available to the Taxpayer. No other evidence was presented by the Taxpayer to establish a value for inventory below the value recommended by the Hearing Officer in her recommendation to the State Board. The Taxpayer failed to produce any evidence in support of its claim that the [sic] it had attempted to sell the inventory for less than the recorded value.

In summary, the State Board does not believe that the Taxpayer is entitled to an adjustment for obsolescence under Regulation 16, Rule 3, Section 9 (50 IAC 4.1–3–9).

Therefore, for the above-mentioned reasons, the State Board of Tax Commissioners has adopted the recommended assessment of its Hearing Officer in the amount of $141,530 assessed value. . . .

(Citation omitted.)

Additional facts will be provided as necessary.

## ISSUES

The issues are:

I. Whether Glass is entitled to an adjustment for abnormal obsolescence on the value of its inventory under 50 I.A.C. 4.1–3–9 for the tax year 1988 and whether Glass is entitled to use alternative methods to value its inventory under 50 I.A.C. 4.1–3–5 or 50 I.A.C. 4.1–3–6?

II. If Glass is not entitled to an abnormal obsolescence adjustment under 50 I.A.C. 4.1–3–9 for the 1988 assessment, should the State Board be estopped from disallowing the adjustment for 1988 because the State Board's hearing officer approved Glass' 1987 and 1989 state tax returns reflecting abnormal obsolescence adjustments in 1989 and the State Board

---

**4.** Glass filed an amended federal income tax return for 1988 which the hearing officer did not view because it was unavailable.

approved the hearing officer's recommendation for 1989 in 1990,[5] where Glass' books and records support the divergent values approved by the State Board and its hearing officer, and the adjustment was not claimed by Glass on Form 103 or Form 106 for 1987 or 1989?

## DISCUSSION AND DECISION

The court's review is limited to determining whether the State Board's determination "is supported by substantial evidence, is an abuse of discretion, is arbitrary or capricious, or is in excess of the State Board's statutory authority." *Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 853 (citing *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391).

### I.

In 1988, 50 I.A.C. 4.1–3–9 provided:

Sec. 9. Obsolescence—A taxpayer may claim an adjustment for abnormal obsolescence as defined in Section 1 of Rule 7 (50 IAC 4.1–7–1)[6] of this regulation on inventory, provided that such taxpayer *follows the procedures and meets the requirements* regarding an adjustment for abnormal obsolescence contained in Rule 7 (50 IAC 4.1–7) of this regulation.

(A) Limitation—No adjustment will be allowed for normal obsolescence as defined in Section 1(B) of Rule 7 (50 IAC 4.1–7–1(B)) of this regulation.[7] The valuation reserve pursuant to Section 8

of Rule 3 (50 IAC 4.1–3–8) of this regulation automatically takes into consideration this type of obsolescence.

(B) Eligibility—The adjustment requested for abnormal obsolescence, as herein defined, will be allowed providing a taxpayer *can substantiate* that he has incurred abnormal obsolescence which has not as of the assessment date been recorded on his regular books and records. The term 'abnormal obsolescence' will be strictly construed and be limited to a situation where unforeseen changes in values as a result of exceptional technological obsolescence or destruction by catastrophe occur, providing that such events have a direct effect on the value of the inventory of the taxpayer at the tax situs in question on a going concern basis.

(C) Adjustment—The dollar amount of the adjustment pursuant to this section will be based upon the adjusted book cost of such inventory, determined pursuant to Section 7 of Rule 3 (50 IAC 4.1–3–7) of this regulation, less the scrap or realizable value of the obsolete inventory. Sixty-five percent of such amount will be allowable as an adjustment for abnormal obsolescence in inventory.

(Emphasis added) (footnotes added) (recodified in 50 I.A.C. 4.2–5–14, effective March 1, 1989).

(Recodified in 50 I.A.C. 4.2–9–3, effective March 1, 1989.)

---

5. The hearing officer added $3,490 to the 1989 self-assessment; however, the addition did not involve the denial of abnormal obsolescence, but recognized such factors as 26 U.S.C. § 263A costs.

6. 50 I.A.C. 4.1–7–1(C) provided:

Abnormal Obsolescence—Abnormal obsolescence is herein defined as that obsolescence which occurs as a result of factors over which the taxpayer has no control and is unanticipated, unexpected, and cannot reasonably be foreseen by a prudent businessman prior to the occurrence. It is of a nonrecurring nature and includes unforeseen changes in market values, exceptional technological obsolescence or destruction by catastrophe that has a direct effect upon the value of the personal property of the taxpayer at the tax situs in question on a going concern basis.

7. 50 I.A.C. 4.1–7–1(B) provided:

Normal Obsolescence—Normal obsolescence is herein defined as the anticipated or expected reduction from the value of business personal property that can be foreseen by a reasonable, prudent businessman when property is acquired and placed into service. In general, it includes the expected, declining value through use, gradual decline in value because of *expected technological improvements*, the gradual deterioration or obsolescence through the mere passage of time and the general assumption that such property will have a minimum value at the end of its useful life. (Emphasis added) (recodified in 50 I.A.C. 4.2–9–2, effective March 1, 1989).

To receive an adjustment for abnormal obsolescence on inventory, a taxpayer must show the value of its inventory has changed, the change in value was unforeseen, and the unforeseen change in value was the result of exceptional technological obsolescence or destruction by catastrophe. *Don Medow Motors, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 545 N.E.2d 851, 852; 50 I.A.C. 4.1–3–9.

Glass asserts exceptional technological obsolescence caused the unforeseen change and deterioration of its inventory to scrap or salvage value ($4.00 to $5.00 per windshield).[8] The exceptional technological obsolescence stemmed from changes in demand, design and technical change, and age. Conversely, the State Board contends any decrease in value was not unforeseen; Glass' explanation of "going out of style" was foreseeable; and Glass has not shown that the windshields were exceptionally technologically obsolete.

Glass' records and federal income tax returns indicated the value of the inventory changed.[9] The value of Glass' closing inventory on the 1987 federal income tax return was $588,130, and on the 1988 amended federal income tax return was reported as $242,032. On its state property tax returns, however, Glass reported less of a change in the inventory's cash value, $106,633 in 1987 and $103,480 in 1988. Nonetheless, because both the State Board's final determination and Glass' federal income tax returns indicated the value of the inventory changed, for purposes of this opinion, the court assumes the value of Glass' inventory changed.

Not only must the value of Glass' inventory have changed, but also the change in value must have been unforeseen to meet the requirements of 50 I.A.C. 4.1–3–9. No evidence was presented to explain why the change in value was unforeseen. To the contrary, according to Mr. Clarence H. Harney, Glass' accountant, the decrease in value was clearly foreseeable. Mr. Harney testified the reason for the decrease in the value of the windshields was, "You can't sell it and it's out of style." Lucy Devries, secretary for Glass, testified that in her opinion based upon the "NAGS"[10] book, seventy-eight percent (78%) of the inventory was obsolete, even though the books were not adjusted for March 1, 1988, to reflect this obsolescence. She stated, "You can't sell it; there's no demand...." "[I]t's just too old." Ms. DeVries believed the inventory became obsolete when the list numbers of the windshields no longer appeared in the "NAGS" listing. Referring to the windshields, the State Board asked Mr. Harney whether it is "normal, standard, typical; the older they get, the harder they are to sell?" He replied, "That's right." Even without Mr. Harney's and Ms. DeVries' testimony, the court would be compelled to find the decrease in value of the windshields was a foreseeable event due to the automobile industry's customary release of newer model cars with different size windshields.

If the court were to assume *arguendo* that Glass could not have foreseen the change in value, Glass would be required additionally to prove that the unforeseen change in value indicating the windshields were abnormally obsolete was caused by exceptional technology. The petitioner in *Don Medow Motors* contended that the Pontiac Sunbird and the Fiero became technologically obsolete because the public demanded larger cars when gas prices decreased. 545 N.E.2d at 853. Looking to the federal definition for guidance this

---

**8.** Glass does not contend the decrease in value stemmed from destruction by catastrophe.

**9.** Because Glass did not keep inventory on a perpetual basis, the hearing officer calculated the value of the inventory pursuant to Regulation 16, which requires the hearing officer to examine the last physical inventory. In the case at bar, the previous year's federal tax return provided the most recent physical inventory valuation. To the most recent inventory value, the hearing officer added purchases and deducted the cost of sales occurring in January and February of the taxable year to arrive at the value of the inventory on March 1st. 50 I.A.C. 4.1–3–2(C) (recodified in 50 I.A.C. 4.2–5–6, effective March 1, 1989).

**10.** NAGS stands for "National Auto Glass Specifications," a book used by the glass industry to calculate the price of automobile glass.

court held, "Obsolescence denotes the end of a useful life or the total loss of value." *Id.* at 854. The Sunbird and the Fiero were not abnormally obsolete due to technological obsolescence because there was still a market for the subcompact cars. *Id.*

According to the testimony given by Glass representatives, Glass' inventory had not totally lost its value and there was still a market for the windshields in 1988. At some point Glass received an offer from Interstate Glass of $22,000 and, at another time, an offer of $30,000 for its windshield inventory. Glass apparently believed the inventory was worth more than $30,000 and chose to keep the inventory. Glass' inventory was not a total loss. The windshields were available for sale, and indeed, some windshields were sold. Glass' windshields were not obsolete due to technological obsolescence because there was still a market for the windshields. Furthermore, Glass presented no evidence even resembling exceptional technology. The court rejects Glass' contention that the different size and style windshields produced for newer model cars could be classified as an exceptional or a technological advance.

Glass has failed to refer to any event supporting its contention the windshields have been rendered technologically obsolete. Furthermore, the change in the size of new windshields, making the older model windshields unfit for newer model cars, was a foreseeable event. The court therefore finds that the State Board's determination that Glass is not entitled to an adjustment for abnormal obsolescence is supported by substantial evidence.

■ The State Board not only found that Glass was not entitled to an adjustment for abnormal obsolescence, but also that Glass presented no evidence showing an assessed value for its inventory below the value found by the hearing officer. 50 I.A.C. 4.1–3–5 [11] and 50 I.A.C. 4.1–3–6 [12] allow a taxpayer to use an alternative method of valuation if certain books and records are kept by the taxpayer.

Evidence presented at trial shows that during a visit to Glass, the hearing officer examined Glass' federal tax returns, the financial statements, a listing of purchases and sales, and the inventory record cards. According to Ms. DeVries, "[w]hen we [Glass] have a sale, I take it off the inventory card, so I take care of the cards in and out. And when we get something in, I ... log it in there [on the card]." The inventory record cards showed that Glass had retained much of the inventory it obtained in 1986 and 1987. During the trial, the hearing officer stated that if Glass had shown proof during the audit that the market value had gone down, she could have made an adjustment for the lower of cost or market value. From the record it appears that the hearing officer did not consider the inventory record cards in making her assessment determination. The inventory record cards could be construed as evidence which shows the value of the inventory had decreased due to the fact that Glass had retained the same inventory since 1986 or 1987, although the hearing officer testified that she did not ascertain the length of time Glass had retained the inventory. Nonetheless, the taxpayer's other books and records neither indicated the inventory's value had declined nor pointed to the cause of decline as of March 1, 1988. The hearing officer examined all Glass' books and records to determine if they adequately reflected that Glass was entitled to use an alternative method of valuation under 50 I.A.C. 4.1–3–5 or 50 I.A.C. 4.1–3–6.

**11.** 50 I.A.C. 4.1–3–5 allows a taxpayer "to elect to value inventory on the prior calendar year average," however, "[a]dequate books and records showing the property on hand and the value thereof as of the last day of each accounting period in the prior calendar year must be maintained by the taxpayer electing to use the average method of inventory valuation." (Recodified in 50 I.A.C. 4.2–5–9, effective March 1, 1989.)

**12.** 50 I.A.C. 4.1–3–6 allows retail merchants to value inventory at the lower of cost or market; however, "[i]f a taxpayer cannot substantiate from the regular books and records of the taxpayer the actual markups, markup cancellations and markdowns actually realized, the election to use the retail method of valuation may not be utilized by the taxpayer." (Recodified in 50 I.A.C. 4.2–5–11, effective March 1, 1989.)

■ The court will not find the State Board erred in finding that no evidence existed to alter the valuation unless such finding is not supported by substantial evidence, that is, more than a scintilla of evidence. *State Bd. of Tax Comm'rs v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, 731. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 731 (quoting *Consolidated Edison Co. v. NLRB* (1938), 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126).

There is substantial evidence to support the hearing officer's assessment determination. Even though the inventory record cards suggest that the value of Glass' inventory may be less than that found by the hearing officer, their existence does not require this court to alter the State Board's finding because, in the case at bar, the inventory record cards alone are not "adequate books and records," nor do they serve as a "substantia[tion] from the regular books and records." 50 I.A.C. 4.1–3–5 and 50 I.A.C. 4.1–3–6. Glass' other books and records examined by the hearing officer did not indicate a value different from the value found by the hearing officer.

The court therefore finds that the State Board's determination that the value of Glass' inventory for 1988 was $141,530 is supported by substantial evidence.

## II.

Next, Glass contends the State Board should be estopped from claiming the inventory was worth more in 1988 than in 1987 and in 1989 because the State Board's hearing officer approved the 1987 total assessed value [13] of $43,540,[14] and the 1989 total assessed value of $47,160,[15] and both the 1987 and 1989 values included adjustments for abnormal obsolescence.

**13.** The total assessed value includes the assessed value of Glass' personal property other than inventory.

**14.** The hearing officer did not alter this value reported by Glass because she believed Glass

■ The elements of equitable estoppel asserted against the State Board are:

1) a representation or concealment of material facts;

2) made with knowledge of the facts;

3) and made to a party ignorant of the facts;

4) which was made with the intention that the other party would act upon it; and

5) which induces the other party to act.

*West Publishing Co. v. Dep't of Revenue* (1988), Ind.Tax, 524 N.E.2d 1329, 1334; *Estate of Lawrence v. Lawrence* (1991), Ind. App., 565 N.E.2d 357, 359.

"Estoppel may arise when one party relinquishes a right through words and conduct which induce another to rely upon them to the second party's detriment. Estoppel is based upon representation and reliance...." *Fraternal Order of Eagles Lodge No. 255 v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 491, 495 (citing *State Highway Comm'n v. Pappas* (1976), 169 Ind.App. 611, 349 N.E.2d 808, 813), *rev'd on other grounds*, 521 N.E.2d 678 (1988).

■ The hearing officer's recommendation for the 1987 and 1989 assessments was not mailed to Glass until December 22, 1989, and the State Board's final determination for 1989 was not issued until February 12, 1990. No final determination has been issued by the State Board for the 1987 assessment.

From the facts presented the court cannot discern any representation made by the State Board that induced Glass to act or any action taken by Glass based upon a representation made by the State Board or its hearing officer. The hearing officer based her assessment recommendation upon Glass' own books and records. The hearing officer's recommendation for Glass' 1988 assessment was issued on June 21, 1989, with the State Board's final deter-

had filed the return in substantial compliance and she therefore could not alter the value due to the statute of limitations.

**15.** This figure includes the hearing officer's addition of $3,490 to the 1989 assessment.

mination issued on September 29, 1989. By 1989, when the hearing officer issued her recommendation for the tax year 1987, Glass had long since filed its 1988 self-assessment and could not have been relying upon actions taken by the State Board's hearing officer in 1989.

■ Furthermore, Glass could not base its claim of estoppel on its own failure to amend its 1987 federal income tax return. In June of 1989, Glass became aware that the State Board's hearing officer disputed its self-assessment of inventory for the tax year 1988. Not until December of 1989 did Glass become aware that the State Board's hearing officer approved its self-assessments for 1987 and 1989. Glass' decision not to amend its 1987 federal income tax return could not have been based upon a mistaken belief that the State Board approved its self-assessment because Glass knew the State Board disputed its 1988 self-assessment prior to the time it was aware that the State Board's hearing officer accepted the 1987 and 1989 self-assessments.

In *R.H. Stearns Co. v. United States* (1934), 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647, the taxpayer requested the Commissioner to postpone the collection of tax until a full audit could be conducted and agreed to allow any overassessment of tax to be set off as a credit against deficiencies. When the Commissioner assessed tax and applied a past overpayment to the resulting deficiency, the taxpayer alleged the Commissioner's action was void because the deficiency was assessed outside the statute of limitations. The court held,

> 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified." ' Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, *the principle that no one shall be permit-*
> *ted to found any claim upon his own inequity or take advantage of his own wrong.* A suit may not be built on an omission induced by him who sues.

*Id.* at 61–62, 54 S.Ct. at 328 (citations omitted) (emphasis added).

Glass will not be permitted to base a claim of estoppel upon its own failure to keep adequate books. In addition, "[e]stoppels against the state are disfavored." *Video Tape Exchange Co–Op, Inc. v. Dep't of State Revenue* (1989), Ind.Tax, 533 N.E.2d 1302, 1304 (citing *West Publishing Co. v. State Dep't of Revenue* (1988), Ind. Tax., 524 N.E.2d 1329, 1333). Glass has failed to establish the elements necessary to estop the State Board from denying an adjustment for abnormal obsolescence.

■ Glass also raised the issues of "collateral estoppel and/or *res judicata* " in its "Submission For Pre–Trial Order." Glass' claim is apparently based upon the theory that the hearing officer's 1987 determination and the State Board's 1989 determination bind the State Board in its 1988 assessment determination.

> The two branches of *res judicata* are 'estoppel by judgment' and 'estoppel by verdict.' Estoppel by verdict or 'collateral estoppel' is applicable when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. Because the concept of 'claims' and 'causes of action' are less important in administrative proceedings, most problems of *res judicata* in administrative law involve collateral estoppel. To determine whether an administrative decision should bar or estop subsequent litigation the following criteria should be considered: (1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency; (2) whether the agency was acting in a judicial capacity; (3) whether both parties had a fair opportunity to litigate the issues; and (4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

*Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 135 (citing *McClanahan v. Remington Freight Lines* (1988), Ind., 517 N.E.2d 390, 394) (citations omitted) (footnote omitted).

In *Foursquare Tabernacle Church of God In Christ v. State Board of Tax Commissioners* (1990), Ind.Tax, 550 N.E.2d 850, the petitioners asserted that the State Board was "collaterally estopped from litigating [the assessment for] the tax years 1983 through and including 1987, because the issues for each of these years" were the same issues determined by a default judgment entered against the State Board which prevented the State Board from litigating issues concerning the 1982 tax year. *Id.* at 852. The State Board, however, was not collaterally estopped by the default judgment for 1983 through 1987 because "[i]n original tax appeals, each assessment and each tax year stands alone." *Id.* at 853. Similarly, in *Morristown v. Womans Club* (1989), 10 N.J.Tax 309, *rev'd on other grounds,* 242 N.J.Super. 654, 577 A.2d 1309 (1990), *cert. granted,* 122 N.J. 392, 585 A.2d 392 (1990), the petitioner alleged that the principle of *res judicata* bound the taxing district in 1987 to follow a judgment which granted an exemption in 1972. The court held, "For purposes of review of tax assessments, each year is a separate year" and the taxpayer's reliance upon the principle of *res judicata* is misplaced. *Morristown,* 10 N.J.Tax at 314.

In the case at bar, the court will not give the 1987 and 1989 assessments collateral estoppel effect for 1988 because each tax year stands alone, to be assessed separately. Glass' contention must fail, especially since the different values approved by the hearing officer and the State Board were based upon, and supported by, Glass' own books and records.

Glass' records and federal tax returns support the differences in total assessed values found by the hearing officer of $42,490 for 1987, $141,530 for 1988, and $47,-160 for 1989. At the end of 1986, the inventory reportedly worth over $560,000 was not shown on Glass' books because Glass had not received all the inventory in 1986. Although the 1987 ending inventory value was listed as $588,130.15, the space allocated for the value of beginning inventory for 1987 was left blank. The hearing officer believed that Glass had increased its stock of inventory throughout 1987, and did not possess all the inventory listed at the end of 1987 in March of 1987. Therefore, the hearing officer's approval of the lower assessed value for March 1, 1987 was justified. On Glass' federal tax returns, the 1987 ending inventory and the beginning 1988 inventory both showed inventory values of $588,130.15. Although the value of inventory at the end of 1988 was amended by Glass on its 1988 federal tax return, the value of inventory reported for January 1, 1988, on the amended return remained $588,130.15. Moreover, Glass' balance sheets showed the value of beginning inventory in 1988 was $588,130.15. In addition, Glass' 1989 federal income tax return indicated the beginning value of inventory as $242,032.60, and the ending value as $158,628.44, thereby supporting a lower assessed value on the state property tax return.

In addition, when the hearing officer approved the 1987 and 1989 values, Glass had not indicated on the state tax return that it was claiming the adjustment for abnormal obsolescence.[16] Instead, Glass subtracted the dollar figure representing obsolescence prior to reporting the value of its inventory on the return.

Accordingly, Glass has failed to show that the principle of *res judicata* or collateral estoppel prevents the State Board from finding an assessed value for the tax year 1988 different from the values found by the State Board or its hearing officer for the 1987 or 1989 tax years.

## CONCLUSION

The court finds that the State Board's final determination denying an adjustment

---

16. State Form 103, Business Tangible Personal Property Tax Return, p. 4, line 26, directs a taxpayer claiming an adjustment for abnormal obsolescence to set forth the dollar figure and to support the adjustment claimed with Form 106. Glass neither filled in line 26 with the amount of the adjustment claimed nor attached Form 106.

for abnormal obsolescence is supported by substantial evidence, is neither arbitrary and capricious, nor constitutes an abuse of discretion and, is according to law. The State Board's final determination is therefore affirmed.