**ALASKA CONTRACTING &
CONSULTING, INC.,**
Appellant,

v.

**ALASKA DEPARTMENT OF
LABOR, Appellee.**

No. S–9022.

Supreme Court of Alaska.

Sept. 15, 2000.

James E. McLain, The Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellant.

Susan L. Daniels, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

In 1990 the Alaska Department of Labor determined that a trucking company was not a "liable employer" required to make contributions under the Alaska Employment Security Act. In a 1994 ruling, an administrative hearing officer barred the department's 1993 attempt to assess the company for contributions for 1990. Did the 1990 determination or the 1994 ruling prevent the department from prospectively determining the company's liability for calendar periods after March 1993, when the department sent the company a new notice of assessment? We hold that (1) res judicata and collateral estoppel did not preclude that prospective determination; (2) AS 23.20.315 permitted a determination of the company's liability for new calendar periods; and (3) the department did not err in finding the company statutorily liable. We therefore affirm the superior court decision that affirmed the administrative finding of liability.

## II. *FACTS AND PROCEEDINGS*

The Alaska Employment Security Act[1] creates an unemployment compensation fund.[2] The act requires employers to pay "contributions" to the Department of Labor[3] for each calendar year in which the employers are subject to the act.[4] They must also withhold employee contributions from their employees' wages, hold the contributions in trust, and pay them to the department when due.[5] The department determines whether an "employing unit is an employer and whether service performed for it constitutes employment."[6] The department's Employment Security Division oversees collection of contributions.[7]

This appeal concerns the department's determination that Alaska Contracting & Consulting, Inc. is an employer liable for making contributions to the fund. Alaska Contracting hauls dirt and other road-building materials to construction sites, and provides road-building equipment including dirt-moving trucks, primarily as a subcontractor. It sometimes completes its projects by leasing its own equipment to individual drivers who then lease the equipment back to Alaska Contracting; these "lease-drivers" then operate the equipment and perform the trucking and hauling on the projects. This appeal relates only to these lease-back operations involving the lease-drivers.

In January 1990 the division sent Alaska Contracting a "notice of non-liability" stating that the company was "not a liable employer," that Alaska Contracting had "no employees," and that the wages it paid "[were] not subject to coverage" under the act.

In March 1993 the division sent Alaska Contracting a "notice of coverage" stating that Alaska Contracting was a "liable employer" which was required to provide unemployment coverage for its employees as of March 1, 1990. The division then retroac-tively assessed contributions for 1990, 1991, and 1992. Alaska Contracting appealed.

Sitting as the appeal tribunal, Hearing Officer Dan A. Kassner heard the appeal and in June 1994 issued his decision. He invalidated the division's March 1993 retrospective coverage determination for 1990, reasoning that because Alaska Contracting had relied on the division's January 1990 non-liability determination, quasi-estoppel prevented the division from retroactively determining Alaska Contracting's status for that year. But he concluded that for the years after 1990, the division could re-audit Alaska Contracting's status and make a new coverage determination based on new or additional evidence. Neither party appealed the June 1994 decision.

In August 1994 the division requested and examined Alaska Contracting's available records for 1991, 1992, and 1993. The division then determined that certain services performed for Alaska Contracting constituted "covered employment" under the act, and that Alaska Contracting was therefore a "liable employer." In May 1995 the division issued a notice of assessment to Alaska Contracting for two calendar quarters in 1991 and one calendar quarter in 1994. Alaska Contracting appealed; it claimed that the June 1994 decision completely barred the assessments.

Sitting as the appeal tribunal, Hearing Officer Stan Jenkins heard the appeal from the May 1995 notice of assessment. In his written decision of July 1996, he ruled that "[c]overage determinations are subject to yearly review and determination." He concluded that Hearing Officer Kassner's June 1994 decision both specifically restricted its application of quasi-estoppel to 1990 and permitted audits and coverage determinations for years after 1990.

---

1. AS 23.20.005–.535.

2. *See* AS 23.30.130(a).

3. Although the agency is now known as the Department of Labor and Workforce Development, ch. 58, § 90, SLA 1999, we use the name applicable when the relevant administrative proceedings took place.

4. AS 23.20.165(a).

5. *See* AS 23.20.165(a)-(c).

6. AS 23.20.315(a).

7. *See* AS 23.20.205(a); 8 Alaska Administrative Code (AAC) 85.030; *see generally* 8 AAC 85.010–.510.

Hearing Officer Jenkins next concluded that truck operators who leased trucks from Alaska Contracting to use on Alaska Contracting's projects performed "services," and that Alaska Contracting had failed to show that these drivers fell outside the scope of covered services or employment. But because Alaska Contracting had not received notice until March 1993 that it could be liable, he also decided that Alaska Contracting was liable only for contributions after April 1, 1993. He therefore modified the May 1995 notice of assessment and remanded the assessment liability to the division for recalculation.

Alaska Contracting appealed the July 1996 decision to the Commissioner of Labor, who affirmed. Alaska Contracting then appealed to the superior court, which also affirmed.

Alaska Contracting appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

 When the superior court acts as an intermediate court of appeal from an administrative determination, we review the agency's underlying determination independently.[8] Different standards of review apply to Alaska Contracting's three legal arguments and we discuss them below where relevant.

### B. *Neither Res Judicata nor Collateral Estoppel Precludes the Department from Determining that Alaska Contracting Is a Liable Employer.*

 Invoking the doctrines of res judicata and collateral estoppel, Alaska Contracting first argues that the division's 1990 nonliability determination had a "preclusive ef-

fect on subsequent administrative proceedings." It also argues that collateral estoppel barred the division from litigating the coverage issue in 1996, reasoning that the division could have litigated that issue at the 1994 hearing.[9] Whether res judicata or collateral estoppel applies is a question of law that we review de novo.[10]

 After entry of a judgment on the merits of a controversy, res judicata bars subsequent actions between the same parties on the same claim, or on claims that the parties were required to bring in the original action.[11] Res judicata, or claim preclusion, implements "the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court."[12] Res judicata applies to adjudicative determinations made by administrative agencies.[13] Res judicata may also apply to administrative proceedings if, after a case-specific review, a court finds that the administrative decision resulted from a procedure "that seems an adequate substitute for judicial procedure"[14] so that according preclusive effect to the administrative decision would be fair.[15]

 Collateral estoppel, or issue preclusion, bars the relitigation of an issue when

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved by a final judg-

---

**8.** See *Smith v. Sampson,* 816 P.2d 902, 904 (Alaska 1991) (independently reviewing Department of Labor determination to deny unemployment benefits).

**9.** Although Alaska Contracting argues that res judicata bars the subsequent litigation of the coverage issue, our discussion focuses on collateral estoppel because the company is actually seeking the relief of issue preclusion.

**10.** See *Renwick v. State, Bd. of Marine Pilots,* 971 P.2d 631, 633 (Alaska 1999).

**11.** See *id.* at 633.

**12.** *Id.* (quoting *DeNardo v. State,* 740 P.2d 453, 455 (Alaska 1987); *see also Drickersen v. Drickersen,* 546 P.2d 162, 169 (Alaska 1976)).

**13.** See *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 (Alaska 1979).

**14.** *State, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 192 (Alaska 1999) (quoting *Holmberg v. State, Div. of Risk Management,* 796 P.2d 823, 825 (Alaska 1990)).

**15.** See *id.* at 192.

ment on the merits; and (4) the determination of the issue was essential to the final judgment.[16]

Issues must therefore actually be litigated before they can be precluded by collateral estoppel. This proposition dooms Alaska Contracting's arguments.

First, the record does not establish that the division's 1990 non-liability determination was a final judgment resulting from an adjudicatory proceeding or from an adequate substitute procedure. Instead, it was the result of an executive decision by a division employee.

Second, elements (2), (3), and (4) of the collateral estoppel test are not satisfied. The June 1994 decision only adjudicated the validity of the March 1993 assessment for the 1990 year. The June 1994 decision could not collaterally estop the department from litigating the issue of coverage for periods not addressed in the June 1994 decision. That decision did not decide that lease-drivers provided no services to Alaska Contracting. It simply ruled that quasi-estoppel barred the department from redetermining coverage for 1990; indeed, it specifically allowed the division to audit and determine Alaska Contracting's status for years after 1990. Moreover, it was not necessary for Hearing Officer Kassner to resolve the coverage issue in 1994 when he ruled that quasi-estoppel precluded the division from assessing Alaska Contracting for the 1990 calendar year.

■ Alaska Contracting also asserts that AS 23.20.450 and AS 23.20.455 incorporate the doctrine of res judicata. Section .450 provides that final determinations and decisions of the department are conclusive upon employing units, the department, and the claimant.[17] Section .455 provides that final decisions of the department "are binding in all subsequent proceedings ... involving similar questions unless expressly or impliedly overruled by a later decision of the depart-

ment or of a court."[18] Alaska Contracting's discussion of those statutes consists of one sentence. It does not explain how those statutes add to its preclusionary analysis. It also fails to cite or discuss AS 23.20.320, which provides that coverage determinations are conclusive. We therefore deem Alaska Contracting to have waived any reliance on those statutes.[19]

Alaska Contracting's preclusionary arguments therefore fail.

### C. Alaska Statute 23.20.315 Permitted the Division to Determine that Alaska Contracting Is a Liable Employer for Periods After April 1, 1993.

■ We must next decide whether the division had statutory authority to determine Alaska Contracting's contribution liability for periods after 1990. Alaska Contracting argues that the division lacked authority under AS 23.20.315(b) to reconsider the division's 1990 non-liability determination because the division failed to present additional evidence showing that Alaska Contracting had changed the way it conducts business. The department counters that AS 23.20.315(a) and (b) authorize it to change an initial determination based on information concerning a different calendar period, and that evidence from the different period should be considered "additional." This issue presents a question of statutory interpretation which does not involve the special expertise of the agency; we therefore apply our independent judgment.[20]

Alaska Contracting confuses "determinations" with "redeterminations." Alaska Statute 23.20.315(a) and (b) provide:

(a) On its own motion or on the application of an employing unit, the department shall, on the basis of facts found by it, determine whether the employing unit is

16. *Renwick,* 971 P.2d at 634 (quoting *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995)).

17. *See* AS 23.20.450.

18. AS 23.20.455.

19. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) (concluding that the

"[f]ailure to argue a point constitutes an abandonment of it") (citations omitted).

20. *See State v. Alaska State Employees Ass'n/ AFSCME Local 52,* 923 P.2d 18, 22 (Alaska 1996).

an employer and whether service performed for it constitutes employment.

(b) Within one year or a longer time which the department for good cause allows, after a determination has been made under (a) of this section, the department may reconsider its determination in the light of additional evidence and make a redetermination.

These subsections of AS 23.20.315 authorize the department to act in two ways. Subsection (a) authorizes it to make coverage determinations based on "facts found by it"; subsection (b) authorizes the department, at its discretion, to reconsider those determinations "in light of additional evidence." The statute therefore requires different showings depending on the nature of the department's action.

We interpret AS 23.20.315(a) to permit the department to determine coverage for a new period, even if its new coverage determination differs from a previous coverage determination. The act states that contributions accrue and are payable by an employer "for each calendar year in which the employer is subject to [the act]." [21] The statute therefore contemplates the possibility of annual changes in an employing unit's coverage status. Here, as in other areas of tax law, each period subject to contribution liability stands alone, to be determined and assessed separately. [22]

To further the department's ability to assess employment security contributions, AS 23.20.105 gives the department broad authority to examine employment records "at any reasonable time and as often as may be necessary." [23] By permitting review as "often as necessary," the act implicitly recognizes that an employer's coverage status may change, and that the department has the ability to decide whether it has changed. This reading is also consistent with the statutory requirement that the act be "liberally construed to accomplish its purposes to promote employment security ... and to provide through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment." [24]

Finally, although we do not defer to the department's statutory interpretation, we agree with the commissioner's reasoning that

> nothing in AS 23.20.315—23.20.320 prevents the ESD from making a new coverage determination in a new tax year or other period.... The ESD may make coverage determinations on a yearly basis, or even quarterly, if the circumstances warrant. The statute does not on its face require the ESD to give an employer perpetual immunity from taxation....

This interpretation comports with the plain language of the statute and with other courts' readings of similar statutes. [25]

We next consider whether, as Alaska Contracting argues, AS 23.20.315(b) permits the department to make a second coverage determination only if it presents new or additional information. We also agree with the

---

21. AS 23.20.165.

22. *See, e.g., Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs*, 568 N.E.2d 1116, 1124 (Ind.Tax 1991) (declining to give previous exemption from property tax assessment collateral estoppel effect to new tax year because each tax year "stands alone") (citing *Foursquare Tabernacle Church of God In Christ v. State Bd. of Tax Comm'rs*, 550 N.E.2d 850 (Ind.Tax 1990); *Town of Morristown v. Womans Club of Morristown*, 10 N.J.Tax 309, 314 (1989), *rev'd on other grounds*, 242 N.J.Super. 654, 577 A.2d 1309 (N.J.Super.1990), *aff'd*, 124 N.J. 605, 592 A.2d 216 (1991)).

23. AS 23.20.105 provides:
*Employing units to keep records and reports.* An employing unit shall keep work records containing information which the department prescribes. The records shall be open to in-

spection and may be copied by the department at any reasonable time and as often as may be necessary. The department may require an employing unit to submit sworn or unsworn reports, with respect to persons employed by it, which are considered necessary for the administration of this chapter.

24. AS 23.20.005(a) provides in full:
This chapter shall be liberally construed to accomplish its purposes to promote employment security by increasing opportunities for placement through the maintenance of a system of public employment offices and to provide through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment.

25. *See supra*, note 22.

commissioner's reading of this subsection that

> [Alaska Statute] 23.20.315(b) covers taxpayer requests for redetermination based on new facts, not prospective redeterminations at the Department's own motion. The provision allowing an extended redetermination period for "... a longer time which the department for good cause allows ..." clearly shows the purpose of the provision, as does the procedure for requesting a redetermination under AS 23.20.315(d).

We agree with the commissioner because the plain language of AS 23.20.315(b) does not apply to new coverage determinations for new tax periods. Instead, we read AS 23.20.315(b) to provide a method of relief from a final determination.[26] After the department determines coverage for a particular tax period, an employer may raise new evidence, the department may review the new evidence to decide whether it correctly determined coverage, and the department may make a retrospective "redetermination" for that tax period.[27]

Our reading of AS 23.20.315(b) favors the department's ability to revisit an "employing unit's" coverage status. An employing unit understandably would prefer a statutory interpretation that enhances the finality of favorable past coverage determinations. But such an interpretation is not required by the language of these subsections and would be contrary to the act's stated purposes.[28] And it could inappropriately limit the department's ability to review coverage status prospectively. Alaska Contracting's reading would also be at odds with AS 23.20.105, which gives the department access to employer records "at any reasonable time and as often as may be necessary."

The 1996 liability ruling decided Alaska Contracting's coverage status and liability for new tax periods not covered by the 1990 non-liability determination. The 1996 ruling did not purport to redetermine Alaska Contracting's coverage status for 1990. Although the 1996 ruling of liability for periods after March 1993 differed from the division's 1990 non-liability determination, it was not a "redetermination" because it did not pertain to the 1990 non-liability determination or to the 1990 assessment periods addressed in the 1994 decision. No new evidence was therefore required.

Alaska Contracting next argues that we must conclude that no new evidence supported Hearing Officer Jenkins's 1996 liability ruling, because it is unknown what evidence the division considered before it made its 1990 non-liability determination, and because Alaska Contracting has not changed its business practices.

For the reasons we noted above, no new evidence was required for the 1996 prospective ruling addressing periods after April 1, 1993. This is so even though the 1996 ruling decided Alaska Contracting's liability by applying the same statutory criteria that applied in 1990: whether Alaska Contracting was an employer, and whether service performed for it by the lease-drivers constituted employment under AS 23.20.315(a) and AS 23.20.525(a)(10). The evidentiary basis required for liability is therefore the same; the coverage determination must be supported by "facts found by [the department]."[29] Nothing in AS 23.20.315(a) required those facts to be "new" or "additional" to those considered in 1990. We discuss the sufficiency of the evidence in Part III.D.

Alaska Contracting also argues that it relied on the division's 1990 non-liability determination and consequently continued to con-

---

**26.** 8 AAC 85.450(a) provides that a coverage determination made pursuant to AS 23.20.315 is final, unless an employer files a written protest, appeal, or request for determination within thirty days after the determination is delivered to the employer or mailed to the employer's address of record.

**27.** *See Sun Valley Express Moving & Storage, Inc. v. Arizona Dep't of Econ. Sec.*, 140 Ariz. 131, 680 P.2d 841, 845 (Ariz.App.1984) (interpreting simi-

lar Arizona statute as setting forth procedural method by which employer may question propriety of liability determination; statute provided department authority to reconsider final liability determination).

**28.** *See* AS 23.20.005(a).

**29.** *See* AS 23.20.315(a).

duct its business in the same way it always had. It argues that the department therefore abused its discretion when it made a new coverage determination absent new evidence.

▮ We assume for purposes of discussion that Alaska Contracting relied on the division's 1990 non-liability determination. But its reliance interest was fully protected. First, Hearing Officer Kassner quasi-estopped the division from retrospectively revisiting the coverage issue for the 1990 calendar year.[30] Second, in 1996 Hearing Officer Jenkins prohibited the division from assessing liability for any calendar period before the company received the March 1993 assessment notice, but permitted the division to prospectively determine coverage for periods after March 1993. Neither party appealed that ruling. In any event, after it received the assessment notice in 1993, it was unreasonable for Alaska Contracting to continue to rely on the 1990 non-liability determination.

We hold that AS 23.20.315(a) permitted the department to prospectively determine Alaska Contracting's contribution liability for new coverage periods, and that subsection .315(a) did not require new or additional evidence for the new determination.

### D. The Department Did Not Err in Finding that Alaska Contracting Is a Liable Employer.

We next consider whether the evidence supported the department's finding that Alaska Contracting was a liable employer. For an employing unit to be liable for contributions, the department must determine that it is an "employer" and that "service performed for it constitutes employment."[31] The act defines "employment" as "service performed by an individual whether or not the common-law relationship of master and servant exists."[32] "Employment" does not include service performed by an individual if all three parts of the following statutory independent-contractor test are met: (a) the individual's actions are free from direction and control; (b) the service is performed outside the usual course of the firm's business; and (c) the individual is customarily engaged in a similar independent trade or business of the same nature as that involved in the service performed.[33] This three-part test is known as the "ABC test."[34]

Alaska Contracting maintains that the evidence shows that the lease-back of equipment is not a "service" under the act. Further, it argues that even if the lease-drivers provided a service, the evidence did not support the department's decision that Alaska Contracting was a liable employer.

The department argues that the drivers who drove trucks or hauled materials for Alaska Contracting's projects performed a service. It further argues that Alaska Contracting did not establish that its drivers were not employees, and that therefore Alaska Contracting is not exempt under the three-part "ABC test."

> (A) the individual has been and will continue to be free from control and direction in connection with the performance of the service, both under the individual's contract for the performance of service and in fact;
> (B) the service is performed either outside the usual course of business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and
> (C) the individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

**30.** The elements of quasi-estoppel are: whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; the magnitude of the inconsistency; whether changed circumstances tend to justify the inconsistency; whether the inconsistency was relied on by the party claiming estoppel to his detriment; and whether the first assertion was made with full knowledge of the facts. *Jamison v. Consolidated Util., Inc.*, 576 P.2d 97, 102–03 (Alaska 1978).

**31.** AS 23.20.315(a).

**32.** AS 23.20.525(a)(10) defines "employment" as: service performed by an individual whether or not the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the department that:

**33.** AS 23.20.525(a)(10).

**34.** *See Tachick Freight Lines, Inc. v. State, Dep't of Labor*, 773 P.2d 451, 453 (Alaska 1989).

## 1. "Service"

The issue of whether the lease-drivers provided a service presents a mixed question of law and fact.[35] The definition of "service" presents an issue of statutory interpretation not involving an agency's special expertise; we therefore apply our independent judgment.[36] The act does not define "service" and therefore "[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [37] We review an administrative agency's factual findings to determine whether they are supported by substantial evidence.[38]

Hearing Officer Jenkins applied the following departmental working definition of "service": "[a] relationship ... where an individual is bound, however strictly and for whatever length of time, to accomplish certain work and labor objectives for another and to receive in return some sort of recompense." Washington courts have defined "personal service" as work clearly performed for a company, or for its benefit.[39] Another definition for "service" is "an intangible commodity in the form of human effort, such as labor, skill or advice." [40] These definitions have common elements of work, labor, or effort expended for another's benefit. We therefore hold that Hearing Officer Jenkins applied a proper test for "service."

Hearing Officer Jenkins then concluded that drivers provided "service" to Alaska Contracting when those drivers operated trucks necessary for Alaska Contracting to satisfy its own obligations. Substantial evidence supports his conclusion.

Richard Van Hatten, president of Alaska Contracting, testified that Alaska Contracting paid each driver who worked on Alaska Contracting's projects a per-ton or hourly rate for the truck's earnings, and that the driver paid two-thirds of that amount back to Alaska Contracting to lease the truck. But Alaska Contracting paid for more than the mere lease of the truck. When using lease-drivers on its own projects, it also paid for the driver's work as part of the "truck's" earnings. Van Hatten himself characterized the lease arrangement as a "truck/driver combination." Because Alaska Contracting's road-building contracts required the work of truck drivers, Alaska Contracting clearly benefitted from the lease-drivers' "services." [41]

Van Hatten characterized Alaska Contracting as a truck "broker" that brokered owners or lessees of equipment with those needing their services. But a broker is an agent who acts as an intermediary between prospective buyers and sellers.[42] Two elements must be met to find that one is acting as a broker: the person must act for compensation, and the person must act on behalf of someone else.[43] When Alaska Contracting leases a truck to a driver to enable that driver to work on Alaska Contracting's own projects, it acts for itself, not for another. Alaska Contracting, in those situations,

35. *See Penick v. Employment Sec. Dep't,* 82 Wash. App. 30, 917 P.2d 136, 142 (1996) (independently reviewing legal question of whether contract drivers provided "personal service" to trucking company).

36. *See Employees Ass'n/AFSCME Local 52,* 923 P.2d at 22.

37. *Guin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979).

38. *See Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963)). We determine only whether such evidence exists and do not choose between competing inferences or evaluate the strength of the evidence. *See id.*

39. *See Penick,* 917 P.2d at 142 ("To fit within the definition of personal services, the work of the contract drivers must clearly have been performed for [the trucking company], or for its benefit.").

40. *Black's Law Dictionary* 1372 (7th ed.1999).

41. *See Penick,* 917 P.2d at 142 ("As the transportation of goods necessarily requires the services of truck drivers, it is clear that [the trucking company] directly used and benefited from the drivers' services.").

42. *See Black's Law Dictionary* 187.

43. *See* 12 Am.Jur.2d *Brokers* § 1, at 632–34 (1997).

therefore acts not as a "broker," but as a contractor for services.

Although we conclude that Alaska Contracting's lease-drivers provided "services," this does not end our inquiry. If Alaska Contracting acts as an "employer" with respect to the lease-drivers, it is covered under the act and is liable for contributions. But it is not covered and is not liable if its lease-drivers are independent contractors under the "ABC test" contained in AS 23.20.525(a)(10).

### 2. The "ABC test"

■■■ For Alaska Contracting to satisfy the "ABC test," it must show "to the satisfaction of the department" that all three prongs of the test are met.[44] The department is vested with broad discretion in deciding whether an employment relationship exists, and we will reverse only if the department has abused this discretion.[45]

Hearing Officer Jenkins concluded that Alaska Contracting failed to satisfy any of the three elements with respect to the lease-drivers. Although it is debatable whether substantial evidence supports his finding regarding part (A) of the test—independent control of the lease-drivers,[46] we need not rule on that question because substantial evidence supports the hearing officer's conclusions that Alaska Contracting did not meet either of the other two essential parts of the test.

Part (B) required Alaska Contracting to show that the lease-drivers performed service "outside the usual course of business" or "outside of all the places of business" of Alaska Contracting.[47] But Van Hatten's affidavit established that hauling dirt is within the usual course of business for Alaska Contracting when it acts as a general contractor or subcontractor, and that Alaska Contracting hauls dirt and heavy equipment to places necessary to satisfy its contractual obligations. Hearing Officer Jenkins therefore did not abuse his discretion by concluding that Alaska Contracting did not satisfy part (B) of the test.

Part (C) required Alaska Contracting to show that each lease-driver "was customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed."[48] Van Hatten asserted in his affidavit that the drivers leasing equipment were required to provide their own insurance and to maintain the equipment, but he produced no evidence that drivers actually provided their own insurance, and he later testified that the drivers actually insured through Alaska Contracting because it was cheaper. Hearing Officer Jenkins permissibly found from this evidence that Alaska Contracting, not the lease-driver, "actually provides insurance on those trucks." Van Hatten also testified that the cost of insurance provided by the company was incorporated in the lease payments, but no evidence supported that assertion or established how the lease payments were calculated.

■■■ Alaska Contracting did produce some records to support its assertion that the lease-drivers were independent contractors, such as various drivers' business licenses and business license applications. But business licenses do not conclusively deter-

---

44. AS 23.20.525(a)(10).

45. *See Tachick Freight Lines*, 773 P.2d at 453 ("[I]t is evident from the statutory requirement of a showing 'to the satisfaction of the department' that the Department of Labor is vested with broad discretion in deciding whether an 'employment' relationship exists. We can only reverse the commissioner's decision if we find that he abused this discretion.") (quoting *Clayton v. State*, 598 P.2d 84, 86 (Alaska 1979)). This standard differs from our usual review of an agency's factual findings for substantial evidence. *See Handley*, 838 P.2d at 1233. *Cf. Penick*, 917 P.2d at 141 (reviewing Washington Employment Se-

curity Department Commissioner's factual findings regarding employment determination for substantial evidence, but affording "great deference.").

46. Van Hatten testified that he did not supervise or direct the drivers, but he also testified that he retained the power to terminate the drivers for cause, although he had never done so.

47. AS 23.20.525(a)(10)(B).

48. AS 23.20.525(a)(10)(C).

mine independent-contractor status.[49] Alaska Contracting also produced some drivers' applications for federal taxpayer identification numbers and some federal tax forms showing that Alaska Contracting had paid the drivers "nonemployee compensation." But its evidence also shows that the lease-drivers often applied for, or obtained, their business licenses and identification numbers only after, or when, they signed their agreements with Alaska Contracting. Hearing Officer Jenkins therefore did not abuse his discretion when he rejected Alaska Contracting's evidence as insufficient to establish that the drivers were customarily involved in similar independent businesses.[50]

Because the record supports Hearing Officer Jenkins's conclusions regarding parts (B) and (C) of the "ABC test," we hold that it was not an abuse of discretion to hold that Alaska Contracting was not exempt from contribution liability and that it was therefore a liable employer.

## IV. CONCLUSION

Neither res judicata nor collateral estoppel barred the department from deciding Alaska Contracting's contribution liability for the tax periods at issue here because the coverage issue had not been previously litigated on the merits. The department therefore had statutory authority under AS 23.20.315(a) to determine coverage prospectively for periods after Alaska Contracting received notice that it could be liable notwithstanding the 1990 determination. Substantial evidence supports the department's finding that the lease-drivers provided "service" to Alaska Contracting. Substantial evidence also supports the hearing officer's 1996 conclusion that Alaska Contracting failed to provide sufficient evidence to satisfy the "ABC test." We therefore AFFIRM the superior court's appellate decision affirming the department's liability determination.

---

49. See Tachick Freight Lines, 773 P.2d at 453.

50. See AS 23.20.525(a)(10)(C).