IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 84233-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| ORLIN ANTONIO CAMPOS CERNA, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. — A jury convicted Orlin Campos Cerna of one count of first-degree murder and one count of attempted first-degree murder when he was 17 years old and sentenced him to 660 months prison time. Both charges were subject to firearm enhancements. After our Supreme Court's decision in State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), Campos Cerna sought a resentencing hearing. The court reduced Campos Cerna's sentence by 276 months and ordered that the firearm enhancements run consecutively. Campos Cerna appeals, arguing that the court overemphasized retribution in resentencing, that 32 years constitutes a de facto life sentence, and that he received ineffective assistance of counsel. We affirm.

## FACTS

On October 11, 2007, Orlin Campos Cerna[1] was involved in an armed conflict with a rival gang in which two members of the rival gang drove a car

___

[1] We note that although the pleadings and briefs on appeal hyphenate Mr. Campos Cerna's name, he signs his name without a hyphen.

Citations and pin cites are based on the Westlaw online version of the cited material.

toward Campos Cerna. Fearing for his life, Campos Cerna drew his gun and fired several times, killing one of the men in the car. Campos Cerna was charged with one count of first-degree murder and one count of attempted first-degree murder. A jury convicted him on both counts. Both charges were subject to firearm enhancements, each adding 60 additional months to Campos Cerna's sentence for a total sentence of 660 months.

In 2018, following our Supreme Court's decision in Houston-Sconiers, 188 Wn.2d 1, which held that a trial court can depart from sentencing guidelines when sentencing juveniles, Campos Cerna filed a CrR 7.8[2] motion in Clark County Superior Court seeking resentencing.

At the resentencing hearing, Campos Cerna presented two expert witnesses: Dr. Kirk Johnson, a forensic psychologist who examined Campos Cerna and produced a report, and Kellie Henderson, a gang expert who works for the Clark County Juvenile Court. He also provided Department of Corrections records showing evidence of rehabilitation. Campos Cerna recounted a troubled and difficult childhood to the court. From when he was eight or nine years old, Campos Cerna was exposed to gangs, drugs, and alcohol in El Salvador. When he was ten years old, his parents moved him and his siblings to the United States in search of a better future. But Campos Cerna's older brothers and cousins soon became involved in the California gang scene, frequently bringing Campos

---

[2] CrR 7.8 provides that a court may relieve a party from a final judgment, order, or proceeding for several reasons, including "any other reason justifying relief," such as newly applicable law.

Cerna along. Campos Cerna ended up joining the MS-13[3] gang himself when he was just 13 years old. During his teen years, Campos Cerna started using drugs and had friends killed by rival gangs. Campos Cerna eventually relocated to Vancouver, Washington, where he quickly joined the Sureños gang.

As a result of his troubled youth, and because of his low intellectual functioning, Dr. Johnson concluded that "when involved in his criminal conduct [Campos Cerna] was likely functioning cognitively well below [his] peers." Henderson testified at the resentencing hearing that youth who experience trauma gravitate toward people who are gang affiliated for a sense of belonging, which in turn makes them more susceptible to the negative influences of gang culture. Henderson explained that youth exposed to trauma from a young age then remain in a state of "hypervigilance" and that they are more likely to overreact to stimuli, such as threats.

The court concluded that an exceptional downward sentence was appropriate based on Campos Cerna's youth, his turbulent childhood experience, his exposure to and involvement with gangs at a very young age, his lack of criminal history prior to the charges, and the difficulty he faced in extricating himself from gang life. The court left the two firearm enhancements in place but reduced Campos Cerna's sentence on the first-degree murder and attempted first-degree murder charges for a new total of 348 months. Campos Cerna appeals.

---

[3] MS-13 is an abbreviation of Mara Salvatrucha.

## ANALYSIS

### Standard of Review

We review a sentencing court's decision for a clear abuse of discretion or misapplication of the law. State v. Haag, 198 Wn.2d 309, 317, 495 P.3d 241 (2021). A trial court abuses its discretion when "its decision 'is manifestly unreasonable or based upon untenable grounds.' " State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). A decision is based on untenable grounds if its factual findings are unsupported by the record. State v. Delbosque, 195 Wn.2d 106, 116, 456 P.3d 806 (2020).

### Statements at Sentencing

Campos Cerna asserts that the trial court erred by overemphasizing retribution rather than mitigation at the resentencing hearing. We disagree.

In all instances in which juveniles are sentenced in adult court, the court has " 'full discretion to depart from the sentencing guidelines and any otherwise mandatory sentence enhancements, and to take the particular circumstances surrounding a defendant's youth into account.' " State v. Rogers, 17 Wn.App.2d 466, 474-76, 487 P.3d 177 (2021) (quoting Houston-Sconiers, 188 Wn.2d at 34). When sentencing juveniles, the court must

> consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and the way "familial and peer pressures may have affected him [or her]. And it must consider how youth impacted any legal defense, along with

any factors suggesting that the child might be successfully rehabilitated.

Houston-Sconiers, 188 Wn.2d at 23 (alteration in original) (citations omitted) (quoting Miller v. Alabama, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

In determining whether an exceptional downward sentence is appropriate for a juvenile offender, resentencing courts may not place more emphasis on retribution than on mitigation. Haag, 198 Wn.2d at 323. If they do, the sentence must be reversed. Haag, 198 Wn.2d at 325. But even when sentencing a juvenile in adult court, courts still retains discretion to impose a standard range sentence. State v. Gregg, 196 Wn.2d 473, 482-83, 474 P.3d 539 (2020).

Campos Cerna relies on Haag to argue that the resentencing court placed more emphasis on retribution than on mitigation. In Haag, the defendant was 17 years old when he murdered a seven-year-old child. 198 Wn.2d at 313. At the resentencing hearing, the court remarked that it was

> faced with the daunting task of properly weighing a multiplicity of factors, which include a vile, cowardly, and particularly heinous multi-step strangulation and drowning of a defenseless, sixty-five pound little girl committed by a three hundred pound[,] seventeen-year-old young man that resulted in a convict[ion] for aggravated murder in the first degree.

Haag, 198 Wn.2d at 315-16 (alterations in original). Our Supreme Court concluded that the resentencing court placed an improper emphasis on retribution because the resentencing hearing was "driven by retribution and not mitigation" and because the court focused on the victim's youth and did not " 'meaningfully consider' " the defendant's youth as required by Houston-

5

Sconiers. Haag, 198 Wn.2d at 323-24 (quoting State v. Ramos, 187 Wn.2d 420, 434-35, 387 P.3d 650 (2017)).

This case is different than Haag. For one, the court's statements at resentencing are nothing like those in Haag. Here, the court meaningfully focused on Campos Cerna's youth as a mitigating factor. At sentencing, the court remarked:

> "His [(Campos Cerna's)] circumstances and background certainly explain his conduct in some ways. It certainly does not excuse it. It's a tremendous loss to this family, and everything about getting involvement in this case did not do either of these families any good. And quite frankly, I've spent thirty-one years in this community and I've watched first as a prosecutor, and then as a defense attorney for almost twenty years, and a judge for eight years, the rise and proliferation of the Norteño Sureño. . . . At any rate, the effect on our community, and the prevalence of it, and I'm certainly aware of that."

Though Campos Cerna asserts that this statement demonstrates that the judge was unduly influenced by its perception that gang prevalence must be addressed in its sentencing decision, that is not the case. To the contrary, the court considered Henderson's testimony about the effects of Campos Cerna's exposure to gangs at a young age as a *mitigating* factor, consistent with the test set out in Houston-Sconiers. 188 Wn.2d at 23. The court went on to remark that "Ms. Henderson's testimony is well taken as to the difficulty of getting out of the gang." The court clearly considered the effect of gang involvement at a young age, both here and in El Salvador, as a mitigating factor, weighing in favor of an exceptional downward sentence, and did not place more emphasis on retribution. The court did not abuse its discretion.

6

<u>De Facto Life Sentence</u>

Campos Cerna maintains that the trial court abused its discretion by sentencing him, a 17-year-old, to 32 years in prison because such a sentence constitutes an unconstitutional de facto life sentence. We conclude the court did not abuse its discretion.

In support of his argument, Campos Cerna again directs our attention to <u>Haag</u>, in which a 46 year sentence given to a 17-year-old was an unconstitutional de facto life sentence. 198 Wn.2d at 317. But Campos Cerna provides no other authority supporting his contention that a 32 year sentence constitutes a de facto life sentence. Indeed, this court has observed that a 31 year sentence is not a life sentence for a juvenile. <u>See</u> <u>Rogers</u>, 17 Wn. App.2d at 475 ("The two defendants in <u>Houston-Sconiers</u> did not themselves face life sentences. Instead, the sentences at issue were 372 months (31 years) and 312 months (26 years), respectively."). Campos Cerna will be released before the age of fifty, at which point he will still have a "meaningful opportunit[y] to reenter society and to have a meaningful life." <u>Haag</u>, 198 Wn.2d at 327.

<u>Statement of Additional Grounds</u>

Under RAP 10.10, a defendant may submit a pro se statement of additional grounds for review. "Our review of such statements, however, is subject to several practical limitations." <u>State v. Calvin</u>, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). For example, we will not consider arguments made in a statement of additional grounds that do not inform the court of the nature and occurrence of the alleged errors. <u>State v. Alvarado</u>, 164 Wn.2d 556, 569, 192

P.3d 345 (2008). And we only consider arguments that have not been adequately addressed by defendant's counsel. RAP 10.10(a).

Campos Cerna raises two additional issues in his statement of additional grounds. First, he asserts that the trial court erred in ruling that both firearm enhancements were to be served consecutively according to statute because the court had discretion to depart from sentencing guidelines. Second, he asserts that his trial counsel provided ineffective assistance by not challenging the court's alleged sentencing error. Neither argument is persuasive.

1. Firearm Enhancements

RCW 9.94A.589(1)(c) requires that firearm enhancements be served consecutively for each conviction of a felony and for each firearm unlawfully possessed. However, where the standard range for consecutive sentencing for multiple firearm-related convictions " 'results in a presumptive sentence that is clearly excessive in light of the purpose of [the Sentencing Reform Act],' a sentencing court has discretion to impose an exceptional, mitigated sentence by imposing concurrent firearm-related sentences." State v. McFarland, 189 Wn.2d 47, 55, 399 P.3d 1106 (2017) (quoting RCW 9.94A.535(1)(g)). The court also retains discretion to impose or depart from the standard range for firearm enhancements when sentencing a juvenile in adult court. RCW 9.94A.533(15); Gregg, 196 Wn.2d at 482-83; Houston-Sconiers, 188 Wn.2d at 25-26.

Campos Cerna asserts that the court erred in ruling that the two firearm enhancements were to be "served consecutively by law" because the RCW 9.94A.533(15) provides courts with discretion to depart from mandatory

8

sentencing enhancements. However, as previously noted, though courts have discretion to depart from the sentencing enhancements, they are not required to do so. Gregg, 196 Wn.2d at 482-83. And it is clear here that the resentencing court understood its discretion.[4] Thus, the trial court did not abuse its discretion in ordering the firearm enhancements to be served consecutively.

2. Ineffective Assistance of Counsel

Defendants have a right to effective representation. State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995); Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

> To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

McFarland, 127 Wn.2d at 334-35. Representation is deficient if, after considering all the circumstances, counsel's performance falls below an objective standard of reasonableness. State v. Estes, 193 Wn. App. 479, 488, 372 P.3d 163 (2016), aff'd, 188 Wn.2d 450, 395 P.3d 1045 (2017). And prejudice exists "if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed." Estes, 193 Wn. App. at 488 (citing State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011)).

---

[4] The court stated: "I don't think I'm bound by [mandatory firearm enhancements], but I also think I can still impose a firearm enhancement if I choose to."

9

Courts engage in a strong presumption that representation was effective. State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). The presumption may be rebutted where there is an " 'absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.' " State v. Crawford, 159 Wn.2d 86, 98, 147 P.3d 1288 (2006) (quoting McFarland, 127 Wn.2d at 336). " '[A]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance.' " In re Pers. Restraint of Tsai, 183 Wn.2d 91, 102, 351 P.3d 138 (2015) (quoting Hinton v. Alabama, 571 U.S. 263, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014)). But failure to object where that objection would not have been sustained is not ineffective assistance of counsel. State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Here, Campos Cerna contends that his counsel's representation was deficient because counsel neglected to mention RCW 9.94A.533(15), which provides courts with discretion to depart from mandatory sentencing enhancements for juveniles. He asserts that this constituted a breach of counsel's duty to research and apply relevant statutes without any tactical purpose. But counsel did argue that the court had discretion to depart from mandatory enhancements. Defense counsel stated: "I believe that the Washington State Supreme Court has indicated that courts can disregard the mandatory provisions of mandatory firearm enhancement. . . . That's not

10

something the Court is required to impose." Though counsel did not specifically ask for the enhancements to run concurrently, counsel still requested that the court depart from the standard requirement to impose firearm enhancements that run consecutively. Campos Cerna's assertion to the contrary lacks merit.

We affirm.

_Smith, A.C.J._

WE CONCUR:

_Chung, J._                    _Hong, J._